UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-24258-ALTMAN

LISSETTE GORDON,

     *Plaintiff*,

*v.*

BARCLAYS BANK DELAWARE,

     *Defendant.*

_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Our Plaintiff sued her bank for alleged violations of the Fair Credit Reporting Act. The bank now moves to compel arbitration of those claims and to stay the proceedings pending the completion of arbitration. After careful review, we **GRANT** the motion.

### THE FACTS

In March 2025, our Plaintiff, Lissette Gordon, "obtained a copy of her consumer reports from annualcredit.com" and "noticed several flaws in the completeness and accuracy of the data provided by Transunion and Equifax." Complaint [ECF No. 1] ¶ 7. The culprit, according to our Plaintiff, is the Defendant, Barclays Bank Delaware ("Barclays"), which reported this "inaccurate and incomplete data"—including "[m]issing balances, past due amounts, and amounts paid by Plaintiff"—because of its "failure to implement and maintain reasonable procedures and reasonably investigate Plaintiff's disputes." *Id.* ¶¶ 11, 18. And that "inaccurate information," our Plaintiff alleges, has "caus[ed] damages," such as "decreased credit scores," "denied credit applications," "cost of postage fees," "reputational harm," "high blood pressure," "headaches," "insomnia," "anxiety," and "depression." *Id.* ¶ 18; *see also id.* ¶ 21 ("Plaintiff's creditworthiness is being negatively impacted because the credit

reporting is materially misleading and is being reported inaccurately."). So, in September 2025, our

Plaintiff—proceeding *pro se*[1]—sued the Defendant, asserting three claims under the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. § 1681. *See id.* ¶¶ 25–40.

In October 2025, the Defendant filed a Motion to Compel Arbitration and Stay Proceedings

("MTC") [ECF No. 9], arguing that the Plaintiff is bound by a Cardmember Agreement (the

"Agreement") [ECF No. 9-2], which includes an arbitration provision that "requires the parties to

resolve through arbitration any claims 'arising out of or relating to' the Account or any transactions

or activities on the Account." MTC at 3.[2] That same month, our Plaintiff filed a Response in

Opposition to the MTC (the "Response") [ECF No. 10], and our Defendant filed a Reply in Support

of the MTC (the "Reply") [ECF No. 11].

## THE LAW

Section 2 of the Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a

contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That

---

[1] "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). We thus read our Plaintiff's complaint and consider her arguments with "the leniency afforded [to] *pro se* litigants." *Anderson v. United States*, 2024 WL 1923227, at *1 n.1 (11th Cir. May 1, 2024).

[2] In September 2019, the Defendant explains, our Plaintiff applied to open a Barclays account. *See* MTC at 2–3. When the Defendant approved that application, it "sent Plaintiff a copy" of the Agreement, which "expressly provides" that "'by signing, keeping, using or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement.'" *Ibid.* (cleaned up). The Defendant thus contends that, because our Plaintiff "used the Account to make charges, thereby accepting and agreeing to the terms and conditions of the . . . Agreement," she "is required to arbitrate any claims against Barclays relating to her Account or any transactions, including those asserted in this action." *Id.* at 3–4. Our Plaintiff doesn't dispute any of this—nor does she argue that the Agreement isn't binding on her.

provision reflects "both a liberal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

The FAA "also establishes procedures by which federal courts implement § 2's substantive rule." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). "A party to an arbitration agreement may move 'for an order directing that such arbitration proceed in the manner provided for in such agreement' under § 4 of the FAA, and for a stay of proceedings in federal court pending the outcome of arbitration under § 3." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022) (quoting 9 U.S.C. §§ 3–4). But "[b]efore enforcing an arbitration agreement, the court should ensure that the agreement was formed and that it applies to the dispute at hand." *Ibid.* "If the parties' arbitration agreement applies to their dispute and no grounds render it invalid or unenforceable, the court 'shall' compel arbitration and stay proceedings in federal court." *Ibid.* (quoting 9 U.S.C. §§ 3–4).

## ANALYSIS

Our Plaintiff challenges the MTC on two grounds. *First*, she says that judicial estoppel precludes the Defendant from enforcing the Agreement because the Defendant previously opposed arbitration when it sued our Plaintiff in county court. *See* Resp. at 3. *Second*, she claims that "Barclays independently waived any right to arbitration by previously invoking the judicial process." *Id.* at 4. We address each argument in turn.

### I.      Estoppel

"A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990); *but see Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022) ("Section 6 instructs that *prejudice* is not a condition of finding that a party . . . waived its right to stay litigation or

Case 1:25-cv-24258-RKA   Document 16   Entered on FLSD Docket 01/22/2026   Page 4 of 8

compel arbitration under the FAA." (emphasis added)). Here, our Plaintiff argues that judicial estoppel bars the Defendant from enforcing the Agreement. In support, she points to a lawsuit the Defendant brought against our Plaintiff in Miami-Dade County Court over an unpaid credit-card balance of $9,359.91. *See* Resp. at 7, 10. In that case, our Plaintiff moved to compel arbitration under the Agreement,[3] and the Defendant successfully opposed that motion. As our Plaintiff sees it, then, the Defendant now "takes irreconcilably inconsistent positions about the same agreement," and "[j]udicial estoppel exists precisely to prevent such selective use of contract language once a court has accepted the earlier position." *Id.* at 3. The Defendant counters that it "should not be judicially estopped from enforcing the arbitration agreement because its positions regarding arbitration in the instant case and in the County Court case are not at all inconsistent." Reply at 2. We agree with the Defendant.

"Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 228 n.8 (2000); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170 (2010) ("[T]hat doctrine typically applies when, among other things[,] . . . judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." (quotation marks omitted)). "Although this estoppel doctrine is equitable and thus cannot be reduced to a precise formula or test, several factors typically inform the decision whether to apply the doctrine in a particular case." *Zedner v. United States*, 547 U.S. 489, 504 (2006) (cleaned up). Courts consider, for instance, whether a party (1) takes a later position that's "clearly inconsistent with its earlier position," (2) "succeeded in persuading a court to accept th[e] . . . earlier position," and (3)

---

[3] The parties agree that the Agreement governed the action the Defendant filed in county court. *See* Resp. at 3 ("When Barclays opposed arbitration in the Miami-Dade County case, it relied on a narrow exception within the very same clause."); Reply at 2 n.1 ("The same arbitration agreement that is at issue in the instant case was the same arbitration agreement at issue in the County Court case.").

4

"would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Ibid.* "As an equitable doctrine, judicial estoppel should apply only when the plaintiff's conduct is egregious enough that the situation demands equitable intervention." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1187 (11th Cir. 2017) (cleaned up).

No such equitable intervention is needed here. The Agreement (it's true) states that, "[a]t the election of either you or us, any claim, dispute or controversy ('Claim') by either you or us against the other, arising from or relating in any way to this Agreement or your Account . . . shall be resolved exclusively by arbitration." Agreement at 3; *see also ibid.* ("If any Claim is advanced in a court, arbitration may be elected under this provision instead."). But it *also* provides that, "[a]lternatively, you and we may pursue a Claim within the jurisdiction of the Justice of the Peace Court in Delaware, or the equivalent court in your home jurisdiction." *Ibid.*[4] The plain language of the Agreement thus allows either party to pursue a claim *either* in county court *or* through arbitration. *See Seritage SRC Fin., LLC v. Town Ctr. at Boca Raton Tr.*, 397 So. 3d 44, 46 (Fla. Dist. Ct. App. 2024) ("When the language of a contract is clear and unambiguous, courts must give effect to the contract as written and cannot engage in interpretation or construction as the plain language is the best evidence of the parties' intent." (quotation marks omitted)). And that's precisely what the Defendant has done here.

"[T]he first question in any arbitration dispute must be: What have these parties agreed to?" *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). Here, the parties agreed to resolve disputes through arbitration *unless* one party elects to litigate in state court. *See* Agreement at 3 ("We agree to honor a request by you to remove the action to a Small Claims Court."). In opting to remain in county court while pursuing repayment of the credit-card debt, therefore, the Defendant simply availed itself of one

---

[4] Neither party argues that the claims at issue here fall beyond the ambit of the Agreement, that the Agreement isn't binding, or that the Miami-Dade County Court isn't an "equivalent court in your home jurisdiction." Agreement at 3.

of the terms of the Agreement. That it now seeks to compel arbitration of *this* claim (filed in federal court)—another option available to it under the Agreement—doesn't mean that it's reneging on that prior position or selectively enforcing the Agreement.

"[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019). And, as we read the terms of the Agreement, the Defendant has acted, in both the prior case and this one, well within its rights. Judicial estoppel is thus inapplicable here. *See Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 642 (11th Cir. 2019) (deeming judicial estoppel "an equitable doctrine invoked by a court at its discretion").

## II.      Waiver

Our Plaintiff next argues that, "[e]ven if judicial estoppel were not dispositive," we should find that the Defendant "has waived any right to arbitration" by virtue of its "actions" in the prior state-court litigation. Resp. at 4–5. As our Plaintiff sees it, the Defendant's "inconsistent conduct" in that case—specifically, its decision to "[f]ile[ ] suit to collect the same account at issue" and to successfully "[o]ppose[ ] [the] Plaintiff's motion to compel arbitration"—"show[s] an intent to litigate, not arbitrate," and thus "constitute[s] waiver." *Id.* at 5. Again, we disagree.

"Like any other contractual right, the right to arbitrate can be waived." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1235–36 (11th Cir. 2018) (cleaned up). But "because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990). And our Plaintiff hasn't met that burden here. To determine whether a party has waived its arbitration rights, we "consider whether under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Gutierrez*, 889 F.3d at 1236 (cleaned up); *see also Warrington v. Rocky Patel Premium Cigars, Inc.*, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023) ("There's no set rule as to what constitutes waiver of an arbitration agreement, so

we review whether a waiver has occurred based on the facts of each case."). "A key factor in deciding this is whether a party has substantially invoked the litigation machinery prior to demanding arbitration," such as by proceeding "with extensive discovery and court proceedings." *Gutierrez*, 889 F.3d at 1236 (cleaned up).

That's not what we have here. True, the Defendant previously brought our Plaintiff to county court. But that was a *different* action, and the Eleventh Circuit has "never held that a party waives its right to arbitrate based on its actions taken in a previous legal action." *Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1201 (11th Cir. 2023). In *this* action, the Defendant filed the MTC just one month after our Plaintiff filed her complaint—without moving for any form of relief and without engaging in "extensive pretrial discovery." *Pinnacle Constructors Grp. LLC v. SSC Tuscaloosa Apartments LLC*, 2024 WL 3042536, at *2 (11th Cir. June 18, 2024). We thus cannot say that the Defendant "chang[ed] course mid-journey" in a way that "smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime." *Warrington*, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023).

Nor do we find that the Defendant acted inconsistently with respect to its arbitration right. As we've established, the Agreement specifies that the parties must *either* arbitrate their claims *or* proceed in state court. The Agreement thus entitled the Defendant to bring an action in state court (and to oppose an attempt to compel arbitration in that case), even as it authorizes the Defendant to move to compel arbitration here. Given that "fair notice at a relatively early stage of litigation is a primary factor in considering whether a party has acted consistently with its arbitration rights," we don't believe that the Defendant deprived our Plaintiff of her arbitration rights or otherwise subverted the FAA's purpose. *Gutierrez*, 889 F.3d at 1237.

In sum, "[o]ur waiver doctrine is typically implicated when parties have invoked the litigation machinery before reversing course and claiming that arbitration was the proper avenue all along."

*Payne*, 81 F.4th at 1201 (quotation marks omitted). Because the Defendant hasn't engaged in that sort of conduct here, our Plaintiff's second challenge fails.

*   *   *

Our Plaintiff offers two theories for denying the MTC. Both fall short. Her claims must therefore be resolved through arbitration, which means that we must stay these proceedings. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

CONCLUSION

After careful review, we **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion to Compel Arbitration [ECF No. 9] is **GRANTED**. The parties are **ORDERED** to submit this dispute to arbitration.

2. Every **ninety days** from the date of this Order, the parties shall file a joint status report on the progress of their arbitration proceedings.

3. This case is **STAYED** and **CLOSED** pending the completion of arbitration. All deadlines are **TERMINATED**, and any other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on January 21, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record
  Lissette Gordon, *pro se*